UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| ARLEATHA SIMMS, <br><br> Plaintiff, <br><br> v. <br><br> FEDEX GROUND PACKAGE SYSTEM, INC., <br><br> Defendant. | Civil Action No. 3:11-CV-745 |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion for Summary Judgment ("Motion") filed by Defendant FedEx Ground Package System, Inc. ("FedEx Ground"). (ECF No. 15.) Plaintiff Arleatha Simms brings this action against her employer, FedEx Ground, seeking monetary damages for alleged retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964.[1] For the reasons stated below, the Court GRANTS the Motion.

## **BACKGROUND**

The following facts are undisputed. (*See* Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n") 1, ECF No. 17.) Simms is an African American female. (Compl. ¶ 1, ECF No. 4; Def.'s Mem. 4.) During the time period relevant to this action, Simms was employed as a Part-Time Service Manager at the FedEx Ground facility in Emporia, Virginia,[2] and was directly supervised by a white male, Pete Widell. (Def.'s Mem. 4, 5.) Widell was a Senior Manager, and he was supervised by District Manager Rochelle Martin. Widell is said to be "disrespectful to everyone." (Def.'s Mem. 5.)

---

[1] Simms's Complaint also asserts hostile work environment claims. FedEx Ground represents that based on communications with Simms's counsel, however, Simms is not proceeding on the hostile work environment claims. (Def.'s Mem. Supp. Mot. Summ. J. 1 n.1, ECF No. 16.)

[2] In 1997, Simms was hired by RPS, which later became FedEx Ground. (Compl. ¶ 4; Def.'s Mem. 4.) On May 8, 2012, Simms voluntarily ended employment with FedEx Ground. (Joint Stip. ¶ 17.)

Sometime in February 2008, Simms's schedule was changed from the evening shift to the morning shift. (*Id.*) The morning shift required supervision over more package handlers and a higher volume of packages than the evening shift. (*Id.*) In an April 4, 2008 performance evaluation ("2008 Evaluation") completed by Widell, Simms received a calculated rating of 3.22/5.0 and was rated as "Meets Expectations." (Def.'s Mem. 5.) Simms subsequently received a discretionary raise in 2008. At some point between September 2008 and the end of December 2008, Widell accused Simms of breaking the jack on a conveyor belt. (*Id.*) Simms did not receive written or verbal counseling for this incident. (Def.'s Mem. 5-6.)

In January 2009, Simms complained to the human resources department at FedEx Ground ("Human Resources") at that Widell subjected her to discrimination and a hostile work environment because of her race and gender. (Def.'s Mem. 6.) Human Resources investigated Simms's allegations and concluded they were unsubstantiated. (Joint Stip. ¶ 6.)[3]

On or about April 30, 2009, Simms received a performance evaluation completed by Widell for the period April 30, 2008, to April 30, 2009 ("2009 Evaluation").[4] (*See* Def.'s Mem. Ex. E.) In the 2009 Evaluation, Simms received a calculated rating of 2.53/5.0 and was rated as "Meets Expectations." (*Id.*) Simms commented on the 2009 Evaluation that she believed she was being discriminated against because of her race and gender. Effective April 30, 2009, Simms received a discretionary 2.5 percent raise.[5] (Def.'s Mem. 6.)

---

[3] The Joint Stipulations were submitted to the Court for trial.

[4] The 2009 Evaluation was also signed as reviewed by Widell's supervisor, Rochelle Martin who is an African American female. (Def.'s Mem. 5.) Simms does not believe Martin retaliated against her at any point, and believes Martin to be an effective manager. (*See* Def.'s Mem. 6, Ex. A ("Simms Dep.") at 9-10, Ex. E, ECF No. 16-1.)

[5] Based on FedEx Ground's merit matrix, Simms was eligible to receive a maximum merit increase of 3 percent. It is within the discretion of an employee's supervisor to determine the exact amount of the salary increase that may be awarded to the employee. (Def.'s Mem. Ex. D, ¶¶ 7, 8.)

On July 13, 2009, Simms again complained to Human Resources that Widell discriminated against her on the basis of her race and gender, and retaliated against her based on her prior complaint to Human Resources. (Def.'s Mem. 7; Joint Stip. ¶ 7.) Again, these allegations were investigated and concluded to be unsubstantiated.

On August 19, 2009, Simms filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") ("2009 Charge"). (*See* Def.'s Mem. 7, Ex. F.) In the 2009 Charge, Simms alleged that, *inter alia*, from August 30, 2008, to August 3, 2009, she was disciplined on numerous occasions for false allegations, that she informed Human Resources of the harassment and hostile work environment in January 2009, and subsequently, in April 2009, she received a low annual evaluation in retaliation. (Def.'s Mem. 7.)

On February 26, 2010, Simms complained for the third time to Human Resources. She alleged discrimination, hostile work environment, and retaliation by Widell. (Joint Stip. ¶ 9.) The allegations were investigated and concluded to be unsubstantiated. (*Id.*)

On September 20, 2010, Simms made her fourth complaint to Human Resources asserting race and gender discrimination, hostile work environment, and retaliation by Widell. (Joint Stip. 10.) As a result of the investigation of Simms's fourth complaint, FedEx Ground discovered that Widell had permitted Simms to work 29.9 hours per week. (Joint Stip. ¶ 11.)[6] Upon this discovery, Martin directed the Senior Managers, including Widell, to limit Part-Time Service Managers' hours to 25 hours per week, unless business needs required the additional hours. (Def.'s Mem. 5; Joint Stip. ¶ 12.) Martin also issued a disciplinary warning to Widell for allowing Simms to work over 25 hours a week without a documented business reason, in violation of company policy. (Joint Stip. ¶ 13.)

---

[6] Part-Time Service Managers at the Emporia facility are allowed to work 25 hours per week, and if business needs require, they can work up to a maximum of 29.9 hours per week. (Def.'s Mem. 4; Joint Stip. ¶ 12.)

Beginning in or around December 2010, Simms's hours were limited to 25 hours per week, unless business needs required additional hours. (Def.'s Mem. 9; Joint Stip. ¶ 14.) Also in December 2010, Widell changed Simms's evening shift hours to begin at 11:30 p.m., as opposed to 5:30 p.m.[7] Simms earned an annual income of $30,957 in 2010, whereas in 2011, she earned $27,714. (Def.'s Mem. 8.) Also in December 2010, Simms refused to sign a Form PE-032 for an employee not on her shift but was not disciplined for her refusal to do so.[8] (Def.'s Mem. 8.)

On February 10, 2011, Simms filed a second charge of discrimination with the EEOC ("2011 Charge"). (Def.'s Mem. Ex. G.) In the 2011 Charge, Simms asserted that: (1) in April 2010, she was "subjected to threatening an intimidating behavior"; (2) in December 2010, her hours were changed during the peak season such that she had to arrive to work later in the day and had to work later in the night to accumulate at least 29.9 hours; and (3) in December 2010, Widell told her to signed a Form PE-032 for an employee who did not work on her shift and had she signed the form, it "could have resulted in disciplinary action against" her. (Def.'s Mem. Ex. G.)

On November 28, 2011, Simms filed this action against FedEx Ground.[9] On June 20, 2012, FedEx Ground filed the Motion for Summary Judgment. In opposition to the Motion, Simms contends that the sole issue before this Court is whether the reduction in her work hours in December 2010 constitutes an adverse employment action that should be resolved by the trier of fact.[10] The matter is now ripe for disposition.

---

[7] Simms was previously transferred back from the morning to the evening shift which began at 5:30 p.m. (Def.'s Mem. 8.)

[8] It appears that the Form PE-032 form is to be signed by an individual who supervises a package handler. Simms refused to sign the form because the package handler did not work on her shift. (*See* Simms Dep. 162:8-165:8.)

[9] The Court directed Simms to particularize her original complaint, and on December 13, 2011, Simms filed the particularized complaint. All references in this Memorandum Opinion to Simms's Complaint are to the particularized complaint.

[10] In her Complaint and the July 2009 and February 2011 Equal Employment Opportunity ("EEO") charges, Simms asserts five other retaliatory actions: (1) a pre-2009 accusation that Simms broke a

4

**LEGAL STANDARD**

A motion for summary judgment lies only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). In making its decision, a court must look to the affidavits or other specific facts pled to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996). Where there is no genuine dispute as to any material fact, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Summary judgment should not be granted, however, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 258.

**DISCUSSION**

In the absence of direct evidence of retaliation, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-07 (1973). Under the

---

conveyor belt; (2) a lower annual performance evaluation in April 2009 than in April 2008; (3) subjection to threatening and intimidating behavior by her supervisors in April 2010; (4) change in her December 2010 work schedule such that she had to come in later and stay later; and (5) direction from her supervisor to complete a form, although doing so would have resulted in disciplinary action against her. Simms seems to have deserted these bases for retaliation by asserting in her opposition to FedEx Ground's Motion, that the "sole issue on summary judgment is whether such reduction in hours constitutes an adverse employment action." (Pl.'s Opp'n 1.) Accordingly, the Court will confine its review of the retaliation claim on the basis of reduced work hours in December 2010.

*McDonnell Douglas* framework, a plaintiff in a Title VII an action must first establish a *prima facie* case of retaliation. If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the employer's action. *Okoli v. City of Baltimore*, 648 F.3d 216, 222 (4th Cir. 2011). If the employer sets forth such a reason, the burden shifts to the plaintiff to establish that the employer's non-retaliatory reason, is a pretext for intentional discrimination. *Id.* at 223. This "final pretext inquiry merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination, which at all times remains with the plaintiff." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (internal quotation marks and alteration omitted).

To establish a *prima facie* case of retaliation, Simms must show that: (1) she engaged in a protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal connection between the protected activity and the adverse action. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). It is undisputed that Simms's filing of the August 2009 and February 2011 charges and the four intra-company complaints (January 2009, July 2009, February 2010, and September 2010) constitutes protected activity. *See* 42 U.S.C. § 2000e-3(a) § 704(a); *see also Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543-544 (4th Cir. 2003) ("Employees are thus guaranteed the right to complain to their superiors about suspected violations of Title VII." (citing *Thompson v. Potomac Elec. Power, Co.*, 312 F.3d 645, 650 (4th Cir. 2002)).

To satisfy the second element of a Title VII retaliation claim, Simms must show that she suffered an adverse employment action. "An adverse employment action is a discriminatory act which 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (internal quotation marks omitted)). The consequences of the allegedly adverse action must be material, that is, "a plaintiff must show that a reasonable employee would

have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67-68 (2006) (internal citation and quotation marks omitted).

A *prima facie* causal connection can be established by a circumstantial showing that a defendant-employer "had knowledge of the protected activity and that the temporal proximity between the employer's knowledge of protected activity and the [adverse action] was 'very close,'" *Bullard v. Panasonic Corp. of America*, 418 F. Supp. 2d 802, 814 (E.D. Va. 2006) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272, (2001)). Although the Fourth Circuit has not adopted "a bright temporal line, [it has] held that a three- or four-month lapse between the protected activities and discharge was 'too long to establish a causal connection by temporal proximity alone.' Even a mere ten-week separation between the protected activity and termination 'is sufficiently long so as to weaken significantly the inference of causation between the two events.'" *Perry v. Kappos*, No. 11-1476, 2012 U.S. App. LEXIS 12145, at *17 (4th Cir. June 13, 2012) (quoting *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)). "Where the time between the events is too great to establish causation based solely on temporal proximity, a plaintiff must present 'other relevant evidence . . . to establish causation, such as 'continuing retaliatory conduct and animus' in the intervening period. *Perry*, 2012 U.S. App. LEXIS 12145, at *17 (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)).

Simms's sole argument in opposition to the Motion for Summary Judgment is that the question of whether the reduction in her December 2010 hours constitutes an adverse employment action is an issue properly reserved for the trier of fact. As stated above, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt*, 999 F.2d at 778-79 (internal quotation marks omitted). Hence, the Court must

7

determine whether Simms's claims are factually supported such that a reasonable trier of fact could find in Simms's favor. The Court finds that the evidence is insufficient for a reasonable trier of fact to find in favor of Simms on her retaliation claim.

Simms contends that in December 2010, FedEx Ground limited her hours to 25 hours "during the busy holiday season (December, 2010) causing her to incur a financial loss during the 2010 Christmas season and thereafter, during 2011." (Pl.'s Opp'n 2.) Simms argues that she had worked 29 hours in the past, and the company's policy permitted her to work 29 hours. (*Id.*) In December 2010, Simms's hours per week were 29.95, 26.55, 26.65, and 28.40. (Def.'s Reply 2 n.1, ECF No. 19-1.) As an indication of the reduced hours, Simms points to the decline in her annual income from $30,957 in 2010 to $27,714 in 2011.

To the extent Simms alleges that the reduction of hours occurred only in December 2010, she fails to state a *prima facie* case of retaliation because the reduction of less than one to two hours on average each week in Simms's December 2010 hours, which amounts to a total of 8.6 hours, fails to constitute a materially adverse employment action. Further, there is no direct correlation between a reduction of 8.6 hours in one month and the loss of approximately $3,000 spread over an annual period. To the extent, however, Simms alleges that the reduction in hours *began* in December 2010 and continued through 2011, there is sufficient evidence for a jury to reasonably find that a reduction of hours is an adverse employment action.

Nonetheless, Simms is unable to establish a *prima facie* case of retaliation because she cannot prove a causal connection between the reduction in hours and her engaging in protected activity. The closest protected activity to the alleged retaliatory act is the fourth intra-company complaint which was made in September 2010—three months prior to the alleged reduction in hours in December 2010. Looking to temporal proximity, without more, a three to four month lapse between

the protected activities and the reduction in hours is "too long to establish a causal connection." *Pascual*, 193 F. App'x at 233.

Further, there is insufficient evidence of "continuing retaliatory conduct and animus" to establish causation. *See Lettieri*, 478 F.3d at 650 ("In cases where temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." (quotation marks and citations omitted)). First, Simms has failed to allege that any untoward acts occurred during the period intervening the September 2010 protected activity and the reduction in hours. Additionally, even looking at the first protected activity in January 2009, Simms has failed to show that any acts which occurred during the time period intervening the January 2009 protected activity and the reduction in hours amounts to retaliatory animus. The record indicates the following acts occurred between January 2009 and December 2010: (1) in April 2009, a lower-annual performance evaluation; and (2) in April 2010, Simms was allegedly subjected to threatening and intimidating behavior. First, with regard to the performance evaluation, in the Fourth Circuit, "even *negative* job performance evaluations do not constitute adverse action unless they are 'use[d] as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Chapman v. Geithner*, No. 1:11-CV-1016, 2012 U.S. Dist. LEXIS 61078, at *70 (E.D. Va. April 30, 2012) (quoting *James*, 368 F.3d at 377 (emphasis in original)). The record indicates that the 2009 performance evaluation did not detrimentally alter the terms or conditions of Simms's employment. Rather, Simms received a discretionary merit pay increase of 2.5 percent. Simms does not allege that her 2.5 percent increase was lower than her previous pay increases, or was comparatively lower than what other employees received, in retaliation against her, or that the 2009 performance evaluation was followed by any unfavorable result. Thus, the 2009 performance evaluation does not indicate retaliatory animus. *See James*, 368 F.3d at 376-77 (finding that a lower performance evaluation was not actionable where the employee

9

received a pay-raise and a bonus). Second, with regard to Simms's allegation that her supervisors subjected her to threatening and intimidating behavior, Simms points only to a particular morning when Widell came out, looked at her in a vicious way and seemed like he "wanted to jump on her." (Simms Dep. 160:16-161:10.) This single incident does not rise to the level of retaliatory animus. There is no evidence that Widell acted this way towards Simms in retaliation for reporting prior discrimination. Instead, from the record, it appears that Widell was disrespectful to everyone and his action towards Simms was in line with his disrespectful nature, as opposed to in retaliation against Simms. Because neither of the intervening acts demonstrates continuing retaliatory conduct or animus, the Court finds that Simms is unable to establish causation between any of her protected activity and her reduction in hours. Accordingly, Simms has failed to establish a *prima facie* case of retaliation.

Assuming, *arguendo*, that Simms established a *prima facie* case of retaliation, FedEx Ground has put forth a legitimate non-retaliatory basis for reducing Simms hours and the Simms has failed to present any evidence of pretext. FedEx Ground explains that its general policy at the Emporia facility is to limit the hours of Part-Time Service Managers to 25 hours, and if business needs require, they may work up to 29.9 hours. Simms does not dispute that this was FedEx Ground's policy. (*See* Joint Stip. ¶ 12.) Moreover, the record indicates that Widell was reprimanded by Martin for permitting Simms to work more than 25 hours, and Widell was following Martin's directives when he subsequently limited Simms hours to 25 hours per week. To the extent that FedEx Ground reduced her hours in December 2010, Simms has failed to put forth any evidence to suggest that the reduction of her hours was anything more than FedEx Ground acting in accordance with the FedEx Ground's policies. In other words, Simms fails to allege that the reduction in her hours is a pretext for retaliation and fails rebut FedEx Ground's legitimate non-retaliatory basis for the reduction in

her hours. The Court, therefore, concludes that there is insufficient evidence for a reasonable trier of fact to find for Simms.

## CONCLUSION

For the reasons stated above, the Court finds that Simms fails to prove a *prima facie* case of retaliation. Even assuming that Simms establishes a *prima facie* case of retaliation, the Court finds that FedEx Ground has set forth a legitimate, non-retaliatory basis and Simms has failed to prove that FedEx Ground's reason is a pretext for intentional discrimination. Therefore, the Court GRANTS FedEx Ground's Motion for Summary Judgment.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

                                                                          _____/s/_____
                                                                         James R. Spencer
                                                                         United States District Judge

ENTERED this \_\_26th\_\_\_\_ day of July 2012.